A97A0515. BM&J CONTRACTORS, INC. v. LIBERTY COUNTY BOARD OF EDUCATION.
(485 SE2d 262)

ELDRIDGE, Judge.

The case sub judice arises out of the construction of a new school, Taylor Creek Elementary, now located on Airport Road in Liberty County, Georgia. Appellant brought suit to recover an alleged outstanding balance in the amount of $13,300 owed to it for the work it performed, and $10,000 for the value of the timber on the property to which appellant claimed it had a right to under the terms of its contract with appellee.

On May 1, 1992, appellee advertised for bids for the clearing, grading, filling, and site work of the site for the construction of a new elementary school. Bids were to be received on or before 2:00 p.m. on June 2, 1992, the date set for the opening of the bids. Appellant submitted a bid for the project, which was the low bid, and the contract was awarded to it.

The contract between appellant and appellee for such work was entered into on June 8, 1992. The terms of the contract included, among other things, the right of appellee to withhold a ten percent retainage on certain progress payments made to appellant for work completed and provided that all merchandisable timber on the property would become the property of appellant.

Appellant's work under the terms of the contract was to commence on June 15, 1992, and was to be completed within 75 calendar days, which would have been August 29, 1992. The work was not completed by August 29, 1992. Several extensions were granted to appellant by appellee. Finally, on April 5, 1993, appellee, through its supervising architect, directed a letter to appellant giving it 14 days to complete the work.

After the expiration of the 14 days, appellee engaged a building and construction contractor, Wise of Georgia, Inc. ("Wise of Georgia") to complete the site work including filling and grading to the specifications of the contract. Wise of Georgia hired Paul Krebs Construction Company to complete the unfinished site work. The total amount paid by appellee to have such site work completed was $13,330, which was deducted from the contract retainage of $22,263.06. The balance of the retainage of $8,933.06 plus interest was paid to the appellant.

Appellant filed suit against appellee to recover the $13,330 that

was deducted by appellee from the retainage, and to recover the additional sum of $10,000 for certain timber that had been cut off the property; appellant contended the timber was on the site at the time of its bid and contended it had a right to the timber under the terms of the contract. The case was tried before a jury, and the jury found for appellee. Appellant filed a timely motion for new trial on the usual general grounds, i.e., (1) the verdict was contrary to law; (2) the verdict was contrary to the evidence; and (3) the verdict was strongly against the weight of the evidence. The motion for new trial was denied by the trial court on August 8, 1996. It is from this order that appellant appeals.

Appellant's sole enumeration of error is that there was insufficient evidence at trial to support the verdict.

"The appellate court will not disturb the trial court's refusal to grant a new trial if there is any evidence at all to support the verdict, however slight, and regardless of what may be the character of the witnesses. Our function is to review the sufficiency of the evidence, and not to determine its weight. Though the evidence might have authorized a different verdict or the verdict is supported by only slight evidence or the evidence is conflicting or preponderates against the verdict[,] where no material error of law appears, the court will not disturb the trial judge's judgment in overruling the motion for new trial." (Citations and punctuation omitted.) *Haynes v. McCambry*, 203 Ga. App. 464, 465 (416 SE2d 893) (1992); *Locke v. Vonalt*, 189 Ga. App. 783 (377 SE2d 696) (1989).

In the case sub judice, the following evidence of probative facts supports the jury's verdict as to both of the claims of appellant.

(a) Appellant's claim for $13,330 deducted by appellee from the retainage.

Robert Ingram of Wise of Georgia testified that because of the delay of appellant in completing the site, they were asked to begin work prior to the full completion of the earthwork. Ingram further testified that after Wise of Georgia took possession of the site, there were six or seven weeks during which they were working on the site at the same time as appellant, that appellant was "spasmatic" in its work performance, and that there were days or weeks in which no work was performed by appellant. Ingram went on to testify that after having worked with the school board industry for approximately 40 years he knew that the contract between appellant and appellee called for appellant to complete the site in every respect, i.e., elevation, grading, and drainage. Ingram testified that his company had to finish work that was appellant's responsibility and which was not complete when appellant left the site. Further, Wise of Georgia was paid between $12,000 and $13,000 to bring in additional fill so that the fill could be elevated for grass, roadways, sidewalks, and

drainage; that Wise of Georgia's contract could not be completed without the additional fill; and that Wise of Georgia was reimbursed for such work through a change order. After examining the change order, Ingram was able to testify that his company was reimbursed $12,400 for sums paid to his subcontractor for bringing in the additional fill in addition to the general contractor profit and overhead of seven and one-half percent which amounted to $930; the total payment was $13,330.

The subcontractor, Paul Krebs, testified that he was hired by Wise of Georgia to do the underground work, such as pipe work, sewer lines, sanitary sewer lines, water lines, and affiliated appurtenances connected therewith; that after he started the job, it was determined that the site was deficient on fill and was not to the grade required on the plan drawings; that he was then engaged by Wise of Georgia to complete the site work; and that he brought in 234 loads of fill which were placed and compacted at a price of $50 a load at a total cost of $11,700.

(b) Appellant's claim for $10,000 for the value of the timber.

Joseph F. Kent, who is a timber dealer and broker, testified that he bought, cut and paid for the planted pine timber from the subject site. Kent further testified that he harvested all the pine timber between February 17, 1992, and March 6, 1992. Defendant's exhibits 8, 9, and 10, which are documents generated by Kent's company showing the weekly cutting and how much timber was harvested during this period of time, further reinforces and supports Kent's testimony. Further, Kent testified that the only timber remaining on the property when he finished cutting on March 6, 1992, was some hardwood in a pond or wet area and possibly a few pines at the back of the site.

The date of the invitation to bid was May 1, 1992, one month and 25 days after the planted pine timber was cut and removed from the subject site by Kent.

" 'Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.' " *Smith v. Merck*, 206 Ga. 361, 375-376 (57 SE2d 326) (1950).

*Judgment affirmed. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

Before Judge Rahn.
*Robert F. Pirkle*, for appellant.
*Jones, Osteen, Jones & Arnold, Charles M. Jones*, for appellee.