## A03A0528. SUNFLOWER PROPERTIES, INC. v. YOCUM.
(581 SE2d 648)

MIKELL, Judge.

A jury awarded David Yocum $168,297.66 in his suit against Sunflower Properties, Inc. ("Sunflower"), to recover for services performed pursuant to the parties' employment contract. Sunflower appeals from the denial of its motion for a new trial. We affirm.

1. Sunflower contends that it is entitled to a new trial because the verdict is contrary to and strongly against the weight of the evidence. We disagree.

The appellate court will not disturb the trial court's refusal to grant a new trial if there is any evidence at all to support the verdict, however slight, and regardless of what may be the character of the witnesses. Our function is to review the sufficiency of the evidence, and not to determine its weight. Though the evidence might have authorized a different verdict or the verdict is supported by only slight evidence or the evidence is conflicting or preponderates against the verdict, where no material error of law appears, the court will not disturb the trial judge's judgment in overruling the motion for new trial.[1]

---

[1] (Citations and punctuation omitted.) *BM&J Contractors v. Liberty County Bd. of Ed.*, 226 Ga. App. 110, 111 (485 SE2d 262) (1997).

In addition, in reviewing the denial of a motion for new trial, we "construe the evidence with every inference and presumption in favor of the verdict and judgment."[2] So viewed, the evidence shows that Sunflower, a construction company, built two apartment complexes: Holly Tree and Pembrooke. Robert E. Chaney, Sunflower's owner and president, testified that he hired Yocum in 1996 as the supervisor for those projects. In the beginning, Yocum was paid a weekly salary plus expenses. In 1998, Chaney instituted an incentive program to give his supervisors "an opportunity for additional earnings."

Yocum testified that under the incentive program, he was supposed to receive one-third of the amount by which he came in under budget on the projects. Yocum further testified that the incentive program was presented to him in letter form, but the letter disappeared from his filing cabinet after he and Chaney "started bumping heads" over bonuses.

Chaney admitted that he reviewed and agreed to the budgets for both projects and that he never paid Yocum any monies under the incentive program. Chaney testified that he gave Yocum a $6,000 raise instead. Yocum resigned in June 2000. Afterward, Sunflower received invoices from suppliers for work Yocum performed in his spare time. Sunflower contended that these invoices exceeded $8,000, and Yocum testified that he was amenable to offsetting that sum against monies owed him under the incentive plan.

Yocum introduced into evidence twelve documents showing the budget, costs, and cost savings of the two projects, including land development and apartment buildings. He testified that Sunflower owed him over $176,000 pursuant to the incentive program. In arriving at its verdict, the jury apparently reduced this sum by the amount Yocum admitted owing Sunflower.

Although Sunflower contends that the job cost reports it introduced into evidence were more accurate than the budgets produced by Yocum, that argument is properly made to a jury, not an appellate court. It is not our function to weigh the evidence.[3] There is evidence to support the verdict in this case, and the judgment issued thereon is affirmed.

2. Before trial, the court granted Sunflower's motion in limine to exclude all evidence of offers to compromise or settle the case. During trial, Yocum began to testify concerning settlement offers made by Chaney. Counsel for Sunflower objected, and the court sustained the objection. Yocum then testified that Chaney never denied owing Yocum money. Counsel for Sunflower objected again, and the trial

---

[2] (Citation omitted.) *Sanders v. Brown*, 257 Ga. App. 566, 567 (571 SE2d 532) (2002).

[3] *BM&J Contractors*, supra.

court immediately instructed the jury to disregard any implied offer of compromise. The court also inquired whether any juror felt unable to follow the instruction. After the curative instruction, Sunflower was silent. Sunflower now argues that Yocum violated the order on the motion in limine. However, by failing to renew its objection or move for mistrial after the curative instruction, Sunflower waived this issue.[4] In addition, we will not consider for the first time on appeal Sunflower's complaint that Yocum testified to settlement matters during rebuttal.[5]

3. Finally, Sunflower argues that the trial court erred in refusing to admit into evidence transaction reports which were not listed in the pretrial order. "Those documents that a litigant intends to rely upon affirmatively to meet the burden of proving his or her case . . . must be disclosed in the pretrial order."[6] The reports excluded in the instant case consisted of data supporting Sunflower's job cost reports. Sunflower failed to produce them during discovery or list them in the pretrial order, and counsel for Yocum was unaware of the existence of the documents until Sunflower sought to introduce them into evidence. Sunflower claimed that it did not intentionally withhold the documents and argued that the documents were essential for rebuttal during the testimony of its bookkeeper, whose credibility had been attacked. In the pretrial order, the parties reserved the right to introduce additional documents into evidence, but only if opposing counsel were provided "a reasonable time prior to trial" to review such documents. The parties additionally reserved the right to "use other documents not listed above for impeachment and rebuttal." The trial court excluded the documents because Sunflower failed to produce them before trial but ruled that the bookkeeper would be permitted to testify that she had generated them. The bookkeeper testified that the actual invoices were used to prepare the transaction reports, which, in turn, were used to prepare Sunflower's job cost reports.

Under OCGA § 9-11-16 (b), a pretrial order entered by the court "controls the subsequent course of the action unless modified at the trial to prevent manifest injustice." A trial court's action in enforcing a pretrial order will not be disturbed on appeal absent an abuse of

---

[4] *Hill v. Cochran*, 258 Ga. 473, 475 (4) (371 SE2d 94) (1988) (objection waived by failure to renew objection after court gave curative instructions); accord *Urrutia v. Jewell*, 257 Ga. App. 869, 873 (2) (572 SE2d 405) (2002); *Carnes v. Woodall*, 233 Ga. App. 797, 800 (2) (505 SE2d 537) (1998).

[5] *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 750 (6) (542 SE2d 151) (2000).

[6] *Ballard v. Meyers*, 275 Ga. 819, 822 (572 SE2d 572) (2002) (interpreting Uniform Superior Court Rule 7.2 (14) and also holding that documentary evidence not listed in pretrial order may be used for impeachment).

discretion.[7] In the case at bar, we note that the excluded transaction reports were created on January 23, 2002, two months before the pre-trial order was filed. It thus appears that the reports could have been produced well in advance of trial. Moreover, the bookkeeper was permitted to testify to their contents to rehabilitate her credibility, and the data contained in the documents was included in summary form in job cost reports that had already been introduced into evidence. Under the circumstances, we find no abuse of discretion in the trial court's refusal to admit the documents at issue into evidence.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED APRIL 11, 2003 —
RECONSIDERATION DENIED MAY 6, 2003.

*Slade & Associates, Howard G. Slade, Jason B. Thompson*, for appellant.

*Joseph M. Todd, John G. Walrath*, for appellee.

---

[7] *Driggers v. Campbell*, 247 Ga. App. 300, 302 (1) (543 SE2d 787) (2000).